MARIE SYLVESTER, Individually and as Surviving Executrix of MARGHERITA SYLVESTER, Deceased, Respondent, *v.* WALTER BERNSTEIN et al., Appellants.

First Department, February 16, 1954.

*William L. Messing* for appellants.

*Millard E. Theodore* for respondent.

BREITEL, J. The question is whether tenants may be evicted in ejectment and be liable for damages because of fraudulent representations made by them in obtaining a commercial apartment for their residential use. Their statements were allegedly made in order to circumvent regulated residential rents. Landlord brings the action after the tenants had successfully recovered in another action excess rent over the maximum residential rent under the State Residential Rent Law (L. 1946, ch. 274, as last amd.).

The issue comes to us on the denial of tenants' motion for summary judgment and to dismiss the complaint on the ground that the judgment in the rent action was *res judicata* of landlord's claim in this action.

In our opinion the motion for summary judgment should have been granted. The landlord is precluded by the judgment in the prior action from claiming any relief against the tenants because she " knew or should have known " that the apartment in question had been rented for residential purposes, or, in any event, that the apartment had been used for an extended period for residential purposes exclusively.

The salient facts are as follows: The landlord advertised the apartment for residential tenancy sometime early in 1950. The maximum rental that might be imposed for the apartment for

residential purposes was $100 per month. At that time the tenants were husband and wife with two children. The couple, tenants say, were separating and the husband was seeking an apartment for his family. The apartment was on the top floor of a five-story walk-up located on Washington Square South. Landlord's agent in dealing with the husband was supposedly told by the husband that the husband was a writer and that in addition to using the apartment for his residence he would use it as a place to work. This, it is suggested, was done by tenants in order to obtain the apartment, although as has been noted, the apartment had been advertised by landlord for residential occupancy. Landlord claims that both husband and wife moved into the apartment, although the tenants claim that the taking of the apartment was the beginning of the separation that was finally to eventuate in a divorce. The apartment was leased at a rental of $200 per month, twice the permitted maximum residential rent. It is not necessary, however, to discuss the facts in great detail. If the principle of *res judicata* is not applicable clearly then there must be a trial.

In March of 1952, the tenants began an action in the City Court of the City of New York to recover treble damages for the overcharge of rent beyond the maximum rent of $100. Judgment was rendered in that case in favor of the tenants on the verdict of the jury which found that the tenants were entitled to recover the excess rent but without a trebling of the excess. Pursuant to the statute the recovery was limited to a period of twelve months, together with attorney's fees and costs.

The Trial Justice in City Court charged the jury in the following words: " The question is, though, did the agent or the landlord's representative, in renting this apartment, know that it was not going to be used, and that it couldn't have been used, for commercial or professional purposes, and that it was predominantly and substantially used for dwelling purposes only. That is the issue. Nothing else."

At the close of the court's charge the attorney for the tenants requested: " I respectfully ask your Honor to charge that regardless of what the facts were at the time of the renting of the apartment, if thereafter the landlord knew or should have known that the apartment in fact was being used for residential purposes and that a predominant part of the apartment was not to be used for commercial purposes, then the landlord was in violation of this law."

The court responded: " During the period it knew or should have known it wasn't so occupied, I so charge."

It is clear then that the law in the City Court action was that landlord would be liable for the excess rent if the landlord " knew or should have known " the facts with relation to the actual use of the apartment. It is argued that the jury could not have found that the landlord actually knew the facts, as distinguished from equivalent knowledge of the facts, because the recovery was limited to the excess rent without trebling (State Residential Rent Law, § 11, subd. 5 as amd. by L. 1951, ch. 443).

We shall assume for the purposes of this determination that the jury did not find that the landlord had actual knowledge of the exclusively residential use to which the premises were put. We shall assume too that the tenants had made false representations to the landlord for the purposes of inducing the landlord to make the lease for a commercial use of the premises.

Making the foregoing assumptions will not avail the plaintiff in this action. The law is well settled that one to whom an alleged false representation is made may not rely thereon under the following circumstances: " if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations. (*Baily* v. *Merrell,* Bulstrode's Rep. Part III, p. 94; *Slaughter* v. *Gerson,* 13 Wall. 383; *Chrysler* v. *Canaday,* 90 N. Y. 272.) " (*Schumaker* v. *Mather,* 133 N. Y. 590, 596.)

The rule had been applied earlier in *Long* v. *Warren* (68 N. Y. 426, 431–433). It was thereafter somewhat limited in *Albany City Sav. Inst.* v. *Burdick* (87 N. Y. 40, 49) but restated in its now generally accepted form in the *Schumaker* case. (In accord: *Kaston* v. *Zimmerman,* 192 App. Div. 511; *White* v. *La Due,* 197 Misc. 589, 594; *Ingber* v. *Weinbrot,* 198 Misc. 824; *Kroll* v. *Zimmerman,* 88 N. Y. S. 2d 440, 444–445, revd. on other grounds 274 App. Div. 1070.) The rule has, moreover, been repeatedly referred to with approval over the years by text writers (12 R. C. L., Fraud and Deceit, § 128; 23 Am. Jur., Fraud and Deceit, § 162; 26 C. J., Fraud, § 56; 37 C. J. S., Fraud, § 27, p. 268; Prosser on Torts [1941 ed.], § 88, pp. 747 *et seq.*)

Moreover, in applying the Statute of Limitations, the courts have deemed the statute to run from the time when the fraud should have been known rather than from when the defrauded party acquired actual knowledge (*Higgins* v. *Crouse,* 147 N. Y. 411, 415; *Sielcken-Schwarz* v. *American Factors, Ltd.,* 265 N. Y.

239, 245–246; *Ectore Realty Co.* v. *Manufacturers Trust Co.,* 250 App. Div. 314, 317–318). In the *Higgins* case the court said: " Fraud lies in the intent to deceive, but the mental emotion is inferred from the facts which indicate it, and it is with those facts and the inferences to which they lead that the law necessarily deals. When, therefore, facts are known from which the inference of fraud follows, there is a discovery of the facts constituting the fraud and within the precise terms of the statute. That the defrauded party did not actually draw the inference, but shut his eyes to it, does not stop the running of the statute. He ought to have known, and so is presumed to have known, the fraud perpetrated." (P. 415.) And further: " In such a case it seems to me that we are bound to impute to the party the knowledge which he ought to have had and would have had if he had done his duty, and say for the purposes of the Statute of Limitations that there was in law a discovery of the facts which constitute the fraud. Certainly there was a discovery of some of them, and the party should be charged with a knowledge of the rest when he might and should have known them." (P. 416.)

Hence the landlord in this case has been determined by the prior adjudication to have had the equivalent of knowledge of the true facts with respect to the occupancy of the apartment. That is a minimum result of the judgment rendered in the City Court action. But we may go a step further. Assuming that landlord did not know at the time she made the lease with tenants that the occupancy was to be exclusively residential, the judgment in the City Court involved a finding that she either acquired that knowledge or that she should have known the facts for at least the year for which excess rent was recovered.

Thus, for the purposes of this case it is not material whether the actual or equivalent knowledge of the facts coincides chronologically with the making of the lease. If such knowledge was acquired thereafter, and the landlord continued with the arrangements by continuing to accept the prohibited rent, the fraud was waived, at least to the extent that the remedy of rescission was involved (*Brennan* v. *National Equitable Investment Co.,* 247 N. Y. 486; 2 Black on Rescission and Cancellation [2d ed., 1929], § 458; 37 C. J. S., Fraud, §§ 65, 69).

Consequently, landlord has lost the right to evict the tenants, even assuming that the tenants obtained possession of the apartment by fraudulent representations. The complaint in this action, to the extent that it seeks the ejection of the tenants, must fail by reason of *res judicata.*

The complaint, however, also asks for damages. No issue has been made on this appeal with respect to that aspect of the complaint, but it merits reference. The complaint relates only to the period up to the time of judgment in the City Court action. That judgment was entered in December, 1952. This action was begun in January, 1953. The landlord, in our view, has no recoverable damages. With respect to the excess rent that was recovered in the City Court action, and the other elements of the judgment rendered therein, these may not, as a matter of public policy, be recovered by the landlord in a retaliatory independent action. The reason is that those recoveries were obtained under the mandate of the statute (State Residential Rent Law, § 11). As to the earlier period for which the excess rent was not recovered, landlord has retained the full rental of $200 per month which she collected. To that extent the landlord was not damaged.

Accordingly, on the grounds set forth the tenants are entitled to an order granting them summary judgment for the reason that the prior judgment in the City Court action is *res judicata* as to the issues tendered in this action. It should not escape comment that the landlord's sudden alacrity to pursue these remedies against the tenants arose only after the tenants used remedies provided to them under the emergency statutes, remedies which were beyond their power to waive, as a matter of public policy.

The order denying the motion for summary judgment and to dismiss the complaint should be reversed and the motion granted.

DORE, J. P., CALLAHAN, BOTEIN and BERGAN, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellants, and the motion granted, and judgment is directed to be entered in favor of the defendants dismissing the complaint herein, with costs.