WEST SIDE FEDERAL SAVINGS & LOAN ASSOCIATION OF NEW
YORK CITY, Appellant-Respondent, v ABRAHAM HIRSCH-
FELD et al., Respondents, and STATE STREET GARAGE
CORP., Respondent-Appellant, et al., Defendant.

First Department, May 10, 1984

APPEARANCES OF COUNSEL

*Donald Zimmerman* of counsel (*Theodore J. Greene, Jeffrey A. Fillman* and *Gerald M. Levine* with him on the brief; *Theodore J. Greene, P. C.,* and *Finley, Kumble, Wagner, Heine, Underberg & Casey,* attorneys), for appellant-respondent.

*Robert Markewich* of counsel (*Arthur Markewich, Maurice Shorenstein* and *Harry Grossman* with him on the brief; *Markewich, Friedman & Markewich, P. C.,* attorneys), for Abraham Hirschfeld, respondent, and for respondent-appellant.

### OPINION OF THE COURT

LYNCH, J.

These are cross appeals from a judgment after a nonjury trial in this action to rescind a mortgage on the ground of fraud and conspiracy. The plaintiff appeals so much of the judgment that implicitly denied its motion to conform its pleadings to its proof to assert a claim of mutual mistake and that dismissed the action against the defendant Hirschfeld. The defendant State Street Garage Corp. (State Street) appeals from so much of the judgment that failed to dismiss the action against it, that adjudged that the plaintiff's loan to it of $1,500,000 secured by a mortgage be

rescinded, and that adjudged that an accounting be had to determine the amount to be paid by it to the plaintiff to effect the rescission of the mortgage agreement. The judgment must be affirmed.

On October 12, 1971, Hirschfeld, widely experienced in the specialized field of building parking garages, leased for 12 years a yet-to-be-built garage to APCOA, a division of a nationwide operator of parking garages. By the lease, the garage was to contain "parking space for at least 528 standard-sized American made passenger cars on an attendant-park basis", with the proviso that if it did not contain 475 spaces the lessee could cancel. APCOA's rent was tied to its gross receipts.

On August 10, 1972, Hirschfeld applied to the plaintiff for a loan of $1,500,000 to be secured by a mortgage on the garage. The application stated that the garage had 500 parking spaces. It listed APCOA, which the plaintiff knew was an experienced garage operator, as the major source of income from the property, and described Hirschfeld himself as the owner of over 20 parking garages in New York City. The plaintiff's independent appraiser valued the property at $2,115,000. It arrived at this figure by capitalizing the expected income, concerning which the appraisal stated, "[all] projections are predicated on 500 attended parking spaces as reported by the garage owner". The loan was approved under an arrangement whereby Hirschfeld was first to transfer the property to a corporation, the defendant State Street of which he is the president and sole stockholder. On December 21, 1972, the mortgage was closed with State Street which assigned all the leases to the plaintiff.

In 1974, the United States District Court granted APCOA a judgment terminating its lease on the ground that Hirschfeld had failed to provide the requisite number of parking spaces. The court found that the garage was able to accommodate but 402 cars. The judgment was affirmed on appeal. The plaintiff here then commenced an action to foreclose its mortgage. This has been stayed pending the determination of the instant action. Sine 1975, the plaintiff has occupied the parking garage, running it through another operator.

The gravamen of the plaintiff's complaint is the defendants' alleged overstatement of the number of parking spaces. The trial court found that while the plaintiff had proved misrepresentation — it held the defendants collaterally estopped from challenging the Federal court's finding of an insufficient number of parking spaces — there was no proof of *scienter,* that is, no proof that Hirschfeld knew of the insufficient number when the mortgage application was made.

At the end of the plaintiff's case at trial, it moved to conform its pleadings to the proof to seek rescission on the ground of mutual mistake. The court reserved decision and the defendants rested without presenting any testimony. In its decision, the court held that granting the motion to conform to assert this new cause of action would prejudice defendants who had, over the six years since the commencement of the action, prepared a defense only to fraud and conspiracy. The court, however, did find that a liberal construction of the plaintiff's pleadings established a cause of action for rescission on the ground of innocent misrepresentation. It held that the proof warranted judgment for the plaintiff on that cause of action: that Hirschfeld misrepresented that there were at least 475 parking spaces directly on the mortgage application and indirectly by way of the APCOA lease; that the representation was material and that it was justifiably relied upon because the capacity of an attended parking garage is a matter of expert judgment, with Hirschfeld being an expert; that, given these circumstances, the plaintiff was not required to hire an expert of its own.

■ The plaintiff asserts that by dismissing the action against Hirschfeld the court limited the relief to which it was entitled as a matter of equity. It was the plaintiff, however, who acceded to Hirschfeld being supplanted by a corporation, the defendant State Street. The plaintiff accepted the corporation's note and a mortgage on its property. The corporate veil may be pierced where it is used to cloak illegality (see *Jenkins v Moyse,* 254 NY 319), but the corporate form was not used here for an illicit purpose. It was used in a legal fashion to accomplish a result sought by all of the parties.

The defendant State Street contends: that the trial court, for the same reason it refused to sanction a claim for mutual mistake, should not have construed the pleadings to find a claim of innocent misrepresentation; that, having done so, it should not have found any false representation by Hirschfeld; that, were it false, it was not material nor was there justifiable reliance on it. It also argues that the plaintiff is barred from rescission, having accepted the benefits of the mortgage agreement, taken possession of the property, and commenced foreclosure of the mortgage.

While the plaintiff's notice of appeal raises the trial court's denial of its claim of mutual mistake, the point has apparently been abandoned, not having been asserted in the brief which, on this score, maintains only that there was sufficient evidence to support either mutual mistake or innocent misrepresentation. Whether or not the disallowance of mutual mistake was error, the trial court properly construed the pleadings to allow a claim of innocent misrepresentation. There was a time when plaintiffs were limited by whatever theory of recovery was stated in their complaint, e.g., "[a] party must recover not only according to his proofs but according to his pleadings" (*Walrath v Hanover Fire Ins. Co.*, 216 NY 220, 225). That day has passed. We are not enjoined to "grant any type of relief within [our] jurisdiction appropriate to the proof whether or not demanded, imposing such terms as may be just" (CPLR 3017, subd [a]).

If we subtract from fraud the element of *scienter,* the remainder constitutes the tort of innocent misrepresentation (*Emerson Elec. Mfg. Co. v Printed Motors*, 252 NYS2d 600, 607). We can, therefore, find no prejudice to the defendants when they knew or should have known for six years prior to the trial that the claim of fraud confronting them charged also those elements adding to innocent misrepresentation. The defendants claim prejudice in that they would not have rested after the plaintiff's case if they had known that they would be faced with a different theory of recovery since they rested secure in the knowledge that the plaintiff had failed to prove one element of fraud, *scienter*. This claim is easily disproved. When the defendants rested without offering testimony, the trial court had

not yet ruled on the plaintiff's motion to conform the pleadings to assert mutual mistake, and mutual mistake, whose elements are so like those of innocent misrepresentation, does not require *scienter*. We note also that the defendants never complained to the trial court of any prejudice by resort to a posttrial motion under CPLR 4404 (subd [b]).

■ The trial court properly concluded that the plaintiff proved innocent misrepresentation: the misrepresentation by the defendants of a material fact made to induce the plaintiff to enter into the mortgage agreement and upon which the plaintiff justifiably relied (see *Emerson Elec. Mfg. Co. v Printed Motors, supra,* pp 607, 608).

The dissent would hold that the plaintiff's case must fail because the trial court found that the determination of the number of parking spaces in a given area is a matter of judgment or opinion. It would hold that because "statements of opinion are treated differently" they must necessarily be unactionable. Assuming without conceding that the representation on the mortgage application that the garage had 500 parking spaces was a statement of opinion rather than of a fact (or an opinion stated as a fact), it is nonetheless actionable, as in certain circumstances, expressions of opinion have long been held to be in New York (see *Gray v Richmond Bicycle Co.,* 167 NY 348; *Hickey v Morrell,* 102 NY 454; *Taylor v Burr Print. Co.,* 26 F2d 331, 334).

*Magnaleasing, Inc. v Staten Is. Mall* (428 F Supp 1039, affd 563 F2d 567) draws the distinction between expressions of opinion that are actionable and those that are not (428 F Supp, at pp 1042-1043): "Mere predictions, however, may not form the basis for an action for fraud when both parties have equal access to the facts, or when it is obvious that the declarant is using a subjective standard. In these situations, reliance on the opinions is deemed unreasonable. However, where one party does have superior knowledge, the expression of an opinion implies that the declarant knows facts which support that opinion and that he knows nothing which contradicts the statement". If Hirschfeld's representation be deemed an opinion, his superior knowledge of parking garages in general and this

parking garage in particular clearly implied that he was privy to facts that would support his statement.

We cannot agree with the defendant State Street's contention, approved by the dissent, that the plaintiff did not rely on Hirschfeld's representation, or the APCOA lease, for the reason that it refused to make the loan without an independent appraisal. This argument overlooks the fact that the independent appraisal projected rental income from the garage "predicated on 500 attended parking places as reported by the garage operator" (underscoring added). Thus, the basis for the appraisal was the same representation of Hirschfeld, this time given to and passed along by APCOA, which later found it to be untrue and proved it to the Federal court.

The plaintiff was justified in relying on Hirschfeld's representation. In so holding, we do not quarrel with the citations of the dissent and the general rule for which they stand. But the general rule, quoted by the dissent from *Schumaker v Mather* (133 NY 590) is attended by a number of exceptions (see 24 NY Jur, Fraud and Deceit, § 168). One of them is applicable here. Stated in terms of this action: when the plaintiff is possessed of a knowledge of parking garages unequal to Hirschfeld's knowledge and is prevented from reasonably ascertaining the truth by a tortious condition for which Hirschfeld must be held responsible, the plaintiff is justified in relying on the representation (*Schumaker v Mather, supra; Kaston v Zimmerman,* 192 App Div 511; *Carney v Morrison,* 223 App Div 244; see, also, 12 Williston, Contracts [3d ed], § 1515B, p 486). The plaintiff exercised "ordinary intelligence" by hiring an independent appraiser who in turn exercised ordinary intelligence by going to the operator of the garage to ascertain the number of parking spaces. The appraiser had no reason to suspect that the operator had been misled by Hirschfeld in the same fashion as had the plaintiff.

The trial court held that the defendants were collaterally estopped by the Federal court judgment from challenging the insufficiency of the number of parking spaces and in so doing found that Hirschfeld's representation to the plaintiff was false. The number of parking spaces was in issue in the Federal court. The question here — whether

Hirschfeld misrepresented the number of spaces — necessarily put the number in issue, and a proper case of collateral estoppel was made out (*Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481). We find no merit to the defendant's argument that the plaintiff's right to claim collateral estoppel was waived. Nor do we find any waiver of the right to rescission. We have not considered the defendant's contention that the plaintiff is barred by having commenced the foreclosure action. It is raised for the first time on appeal. The plaintiff's entry into possession of the garage appears to have been necessary for the preservation of the property until its right could be determined (see *Weigel v Cook,* 193 App Div 520).

Judgment (denominated counterjudgment), Supreme Court, New York County, entered on June 11, 1982 after a nonjury trial (before Martin B. Stecher, J.), which implicitly denied plaintiff's motion to conform its pleadings to the proof, dismissed the action with prejudice as to defendant Hirschfeld, adjudged that a loan in the principal amount of $1,500,000 secured by the mortgage dated December 21, 1972 be rescinded, and adjudged that an accounting be had to determine the sum to be paid by defendant State Street to plaintiff to effect the rescission of the mortgage agreement, should be affirmed, with costs and disbursements to plaintiff.

ASCH, J. P. (dissenting in part). I agree with the majority in its affirmance of that portion of the judgment which dismissed the action against the individual defendant Abraham Hirschfeld. Concededly, the corporate entity may be disregarded where it is used as a cloak for fraud or illegality. However, where the law has been employed to accomplish a result which all the parties desired, and where there has been compliance with the law, there is no authority authorizing the court to pierce the corporate veil so as to impose personal liability against a principal of the corporation.

I disagree with the affirmance as to that portion of the judgment which granted judgment against the corporation, defendant State Street Garage Corporation, on the grounds of innocent misrepresentation.

The trial court in its decision, after this nonjury trial, dismissed the five causes of action contained in the complaint, all of which were grounded in fraud. (The fifth cause of action sought attorney's fees "by reason of the fraudulent conduct and deceit" of the defendants.) The trial court held that *scienter* was unproven. As it explained in its dismissal of the second cause of action: "The judgment of Mr. Hirschfeld and of his architect clearly showed that they believed that more than the minimum of 475 spaces was present. There is no proof whatever that either Mr. Hirschfeld or Mr. Ho, the architect, was aware that the garage had an insufficient number of spaces when the mortgage application was either made or closed and indeed they strongly urge to the present time that there were and are 491 spaces or more as testified by the architect Ho. Scienter is a necessary element in proof of fraud [Channel Master Corp. v Aluminum Ltd. Sales, Inc., 4 NY2d, 403] and there is no proof of it here."

The court also denied plaintiff's motion to amend its complaint to allege mutual mistake. It stated that to grant the motion would unfairly prejudice the defendant inasmuch as the defense was prepared on the basis of depositions, etc., with a view to resisting a fraud claim and not a claim of mutual error. Nevertheless, the court then went on to state: "In my view, there has been sufficient proof of misrepresentation without fraud to warrant the entry of judgment for the plaintiff."

The prejudice to defendants which led the trial court to deny the plaintiff's motion to amend its complaint to allege mutual mistake should have operated to prevent the court from its *sua sponte* determination that a cause of action for innocent misrepresentation existed.

Focusing on the issue of *scienter,* defendants rested at the end of plaintiff's case. Thirteen months later they were faced with a decision and judgment based upon a cause of action against which they had no opportunity to defend.

In any event, plaintiff failed to make out a legally sufficient case of innocent misrepresentation. "[G]ranted that * * * [i]t is not necessary in order that a contract may be rescinded for fraud or misrepresentation that the party making the misrepresentation should have known that it

was false. Innocent misrepresentation is sufficient" (*Seneca Wire & Mfg. Co. v Leach & Co.,* 247 NY 1, 7-8). It is well settled that an innocent misrepresentation of a material fact permits rescission even though made without an intent to deceive. It is also well settled that statements of opinion are treated differently than cases involving misrepresentations of objective fact (see *Stern v Satra Corp.,* 539 F2d 1305, 1308; *Samuels v Eleonora Beheer, B. V.,* 500 F Supp 1357, 1364). Although finding that there was an "innocent misrepresentation", the trial court at three different places in its decision also held that the "garage capacity", allegedly the object of the "innocent misrepresentation," was a matter of judgment or opinion. The court states: "From the evidence it appears that the parking capacity of a garage is a matter of opinion, particularly in the case of attendant parking where, in order to fit more cars in, no lines are drawn on the floors to indicate parking 'slots' ". At another point, the court wrote: "As indicated previously, what constitutes sufficient space to park a standard sized American automobile is a matter of judgment. The judgment of Mr. Hirschfeld and of his architect clearly showed that they believed that more than the minimum of 475 spaces was present." Finally, the court noted: "As indicated previously, the capacity of a parking garage is not easily ascertainable to the untrained eye. Frequently it is a matter of both opinion and the capability of the persons parking the cars."

Thus, the trial court correctly characterized the representation as one of opinion and judgment but erred in not drawing its legal conclusion on this determination.

In addition, the trial court found that plaintiff relied upon the representations in advancing the $1,500,000. This finding is against the clear weight of the evidence. The testimony and other evidence submitted establishes that plaintiff bank relied upon the independent appraisal of Sanders A. Kahn, Inc., which was accepted by its own staff appraisers. This independent appraisal was concerned exclusively with the valuation of the property as a whole at $2,115,000. The testimony of Bertram Mock, plaintiff's mortgage officer at the time of the transaction, showed that the loan was expressly conditioned on receipt of a

satisfactory outside appraisal. This actual reliance was confirmed in his commitment letter and in his handwritten notes in which he emphasized that the *sine qua non* of the loan was the independent appraisal. The minutes of the board of directors of the plaintiff bank further show that reliance was actually placed on the independent appraisal. Confirmation of this is seen in plaintiff's commitment letter to Mr. Hirschfeld, which in a four-page, single-spaced letter agreement, contains not even a single reference to the capacity of the garage. If the $1,500,000 loan was given in reliance on the provision for capacity in this one lease, the commitment letter would and should have made it an express representation.

Finally, assuming, *arguendo,* that plaintiff actually relied on the representation as to the garage's capacity, it was not legally justified in so doing. "The law is well settled that one to whom an alleged false representation is made may not rely thereon under the following circumstances: 'if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations' (*Schumaker* v. *Mather,* 133 N.Y. 590, 596)" (*Sylvester v Bernstein,* 283 App Div 333, 336).

Mr. Leonard Saltzman, plaintiff's mortgage officer, more than a year *after* the consummation of the subject loan, testified that after the operator vacated the garage, plaintiff retained a consulting engineer to make "a thorough study of the [garage] facilities, firstly with respect to the parking capacity." Thus, knowledge of the garage capacity was not peculiarly within defendants' knowledge. Plaintiff, West Side, must be deemed sophisticated and knowledgable in requiring assurances of collateral, etc., before lending money. This is shown by its commissioning of an independent appraisal. It could just as easily have commissioned the engineer's study also before the loan closed. Since the means were available to it of knowing the truth or "real quality" of the representation, it should have made use of those means (*Sylvester v Bernstein, supra*).

Accordingly, the judgment of the Supreme Court, New York County (Stecher, J.), entered after a nonjury trial, on June 11, 1982, which, *inter alia,* dismissed the action with prejudice as to the individual defendant Hirschfeld and adjudged that a loan in the principal amount of $1,500,000 to defendant State Street Garage Corporation evidenced by a note and mortgage dated December 21, 1972 be rescinded, should be modified, the complaint dismissed against defendant State Street Garage Corporation, and otherwise affirmed.

SILVERMAN, FEIN and KASSAL, JJ., concur with LYNCH, J.; ASCH, J. P., dissents in part in a separate opinion.

Judgment, Supreme Court, New York County, entered on June 11, 1982, affirmed. Plaintiff-appellant-respondent shall recover of defendant-respondent Hirschfeld and defendant-respondent-appellant one bill of $75 costs and disbursements of this appeal.