MINEBEA CO., LTD., et al., Plaintiffs,

v.

Georg PAPST, et al., Defendants.

No. Civ.A. 97–590 SSH.

United States District Court,
District of Columbia.

June 22, 1998.

Tom M. Schaumberg, Adduci, Mastriani & Schaumberg, Washington, DC, Joel E. Lutzker (pro hac vice), David H. Kagan (pro hac vice), Leonard S. Sorgi (pro hac vice), Amster, Rothstein & Ebenstein, New York City, for Plaintiffs.

Sara B. Farabow, Seyfarth, Shaw, Fairweather & Geraldson, Washington, DC, Jerold B. Schnayer (pro hac vice), Philip D. Segrest, Jr. (pro hac vice), Welsh & Katz, Chicago, IL, for Defendants.

## *OPINION*

STANLEY S. HARRIS, District Judge.

Before the Court are defendants' motion to dismiss, plaintiffs' opposition thereto, defendants' reply, and the parties' citations of supplemental authority and responses thereto. Based on plaintiffs' complaint and the submissions of the parties, the Court grants defendants' motion to dismiss Counts VIII and IX but denies defendants' motion with respect to all other counts. An appropriate Order accompanies this Opinion.

## BACKGROUND

This dispute arises out of a series of business transactions between plaintiff Minebea Co., Ltd. ("Minebea"), its subsidiaries, plaintiffs Precision Motors Deutsch Minebea, GmbH ("PMDM"), and Nippon Miniature Bearing Corporation ("NMB"), and defendants Georg Papst and Papst Licensing GmbH ("Papst Licensing").[1] In 1990, Minebea and Papst–Motoren GmbH & Co. KG ("Papst–Motoren KG"), a German corporation owned and controlled by Papst and his immediate family, entered into a "General Business Agreement" which established a joint venture for the research, development, engineering, manufacture, and sale of hard disk drive motors ("HDD spindle motors"). One of the joint venture entities created was PMDM, and all the joint venture entities were controlled by Papst. As part of the joint venture agreement, Papst–Motoren KG granted Minebea the right to use all its patents, and it was agreed that purchasers of HDD spindle motors from the joint venture or Minebea and its subsidiaries would be free to utilize such motors for their sole intended use—in hard disk drives—without any danger of infringing any patents owned or controlled by Papst–Motoren KG or Georg Papst.

Plaintiffs allege that, beginning in 1991, Papst made misrepresentations to Minebea regarding the scope of the joint venture. In particular, Minebea alleges that Papst misrepresented that certain patents had not been previously licensed to Minebea under the General Business Agreement. Minebea relied upon these representations in all of its subsequent discussions and dealings with Papst due to the fiduciary relationship established during the joint venture. Moreover, Minebea alleges that Papst formed Papst Licensing for the purpose of, *inter alia*, converting valuable joint venture assets to his benefit.

Eventually, in 1993, the parties decided to end the joint venture. They entered into a series of agreements which provided that (1) Papst Licensing would be substituted for Papst–Motoren KG, (2) Minebea would purchase Papst Licensing's interest in PMDM

---

1. Plaintiffs allege that Papst Licensing is the alter ego of Georg Papst.

and the other joint venture entity, and (3) Minebea would pay Papst Licensing in return for being granted licenses under various of Papst's patents. The agreements specifically carved out from Minebea's license certain "Drive Patents" owned by Papst and Papst Licensing. Minebea claims that it agreed to this provision based on misleading representations by Papst that the Drive Patents were never included in the General Business Agreement.

Finally, in 1995, Minebea and Papst Licensing entered into a "Settlement Agreement," purportedly to create a "lasting peace" between the parties by granting Minebea and PMDM the patents necessary for them to continue the business of selling HDD spindle motors. Plaintiffs allege that during the process of negotiating the Settlement Agreement, Papst and Papst Licensing continued to misrepresent the number and scope of previous patents licensed to Minebea and PMDM during and after the joint venture. The result of these misrepresentations was that the Settlement Agreement contained a clause reserving certain rights for Papst and Papst Licensing against purchasers of Minebea's HDD spindle motors.

Starting about the spring of 1995, Papst and Papst Licensing began to make claims that plaintiffs' customers were violating certain Papst patents. They alleged that the customers' incorporation of the HDD spindle motors into hard disk drives infringed other Papst patents. Minebea and its subsidiaries learned of the allegations after they received demands for indemnification from their customers. Plaintiffs then filed the instant complaint, alleging that through fraud and deceit, Georg Papst and Papst Licensing had carved out patent rights which had previously been licensed to Minebea and were necessary for the ongoing HDD spindle motor business of Minebea and its subsidiaries.

2. Plaintiffs' complaint never specifically alleges federal question jurisdiction for Counts I–VI and VIII–X. Plaintiffs do, however, discuss jurisdiction generally at the beginning of the complaint. See Compl. ¶¶ 6–8. Regardless, it appears well-settled that "if the allegation of jurisdiction is insufficient or entirely lacking but there are facts pleaded in the complaint from which jurisdiction may be inferred, then the [12(b)] motion must be denied." 5A Charles A. Wright & Arthur R.

## DISCUSSION

### A. *Subject Matter Jurisdiction*

Defendants first contend that plaintiffs' complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because it does not raise a federal question. Defendants further contend that even if some counts of the complaint raise a federal question, the Court should not exercise pendent jurisdiction over the remaining state law counts. Plaintiffs argue that there is an independent federal question in each count of the complaint, or alternatively that there is at least one federal question presented and the Court should exercise supplemental jurisdiction over the remaining claims.[2]

### 1. Count VII—Violation of § 43(a)

In Count VII, plaintiffs allege that defendants have violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by falsely claiming that the use of plaintiffs' motors in a hard disk drive infringes upon defendants' patents and that plaintiffs are not licensed under such patents. It appears clear to the Court that false patent infringement and licensing claims may violate the Lanham Act, and therefore this Court has subject matter jurisdiction over Count VII pursuant to 28 U.S.C. § 1331. *See, e.g., Laser Diode Array, Inc. v. Paradigm Lasers, Inc.,* 964 F.Supp. 90, 95 (W.D.N.Y.1997) ("There is case authority that allegations that a party falsely represented to a business's customers that the business was infringing on the party's patent rights will support such [a Lanham Act claim]." (citations omitted)); *Wicker Grp. v. Standard Register Co.,* 33 U.S.P.Q.2d 1678, 1680 (E.D.Va.1994) (plaintiffs' allegations that defendant made false statements about

Miller, Federal Practice and Procedure: Civil 2d § 1350 (1990); *see also Demarest v. United States,* 718 F.2d 964, 965 (9th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984); *Raus v. Brotherhood Railway Carmen,* 663 F.2d 791, 796 (8th Cir.1981); *Harary v. Blumenthal,* 555 F.2d 1113, 1115 n. 1 (2d Cir. 1977); *Richards v. United States Merit Sys. Protection Bd.,* 739 F.Supp. 657, 658 (D.D.C.1990).

the scope of its patent and its relationship to plaintiffs' technology adequately pled a Lanham Act violation); *Brandt Consol., Inc. v. Agrimar Corp.*, 801 F.Supp. 164, 170 (C.D.Ill. 1992) (denying motion to dismiss Lanham Act count based on false patent infringement claims).

## 2. Counts I, X, and XI—Requests for Declaratory Relief

In Counts I, X, and XI, plaintiffs request a declaration pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 & 2202 (1994), that: (1) plaintiffs' authorized sales of HDD spindle motors exhaust defendants' patent rights; (2) certain patents allegedly infringed by plaintiffs' customers are encompassed in the licensing agreement; and (3) defendants' patents are invalid and not infringed by plaintiffs' customers.

■ Defendants first argue that the Court does not have jurisdiction over these declaratory judgment counts because there is no "case of actual controversy." *See* 28 U.S.C. § 2201(a). Plaintiffs counter that there is a "case of actual controversy" because defendants have notified plaintiffs' customers of possible infringement claims due to their use of Minebea motors. Compl. ¶¶ 165 & 166. Plaintiffs further allege that they have "express and implied contractual terms" with customers pursuant to which customers are making "express and implied demands for indemnification" due to defendants' infringement claims. Compl. ¶ 166. Plaintiffs "reasonably apprehend that they may be legally liable for indemnification with respect to such infringement claims by Papst Licensing." *Id.*

■ The test for determining whether an actual controversy exists in a patent case has been phrased in many ways, depending on the facts of the particular case. *See Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736–37 (Fed.Cir.1988). The two core elements of the test are: "(1) acts of defendant indicating an intent to enforce its patent; and (2) acts of plaintiff that might subject it or its customers to suit for patent infringement." *Id.* at 737; *see also Fina Research, S.A. v. Baroid Ltd.*, 141 F.3d 1479, 1480 (Fed.Cir.1998) (" 'There must be both

(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement. . . .' ") (quoting *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed.Cir.1995), *cert. denied*, 516 U.S. 1093, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996)); *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 879 (Fed.Cir.1983) (test is whether "plaintiff has sufficient interest in the controversy and . . . [whether] there is a reasonable threat that the patentee or licensor will bring an infringement suit against the alleged infringer") Plaintiffs' allegations, therefore, meet the actual controversy requirement. *See, e.g., Joseph Bancroft & Sons Co. v. Spunize Co. of Amer.*, 268 F.2d 522, 523 (2d Cir.1959) (finding an actual controversy when declaratory plaintiff was obligated to pay the attorney's fees and taxable costs of the infringer); *Dow Chemical Co. v. Viskase Corp.*, 892 F.Supp. 991, 996–97 (N.D.Ill.1995) (approving of the proposition that a manufacturer's obligation to indemnify customers threatened with a patent suit is a sufficient basis for jurisdiction); *Wallace & Tiernan, Inc. v. General Elec. Co.*, 291 F.Supp. 217, 222 (S.D.N.Y.1968) (finding actual controversy when declaratory plaintiff agreed to indemnify customers against losses from patent claims by defendant).

Defendants, citing *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975 (Fed.Cir. 1993), argue that indemnification obligations are no longer sufficient to create an actual controversy. In *BP Chemicals*, the plaintiff had indemnification agreements with customers, but the Federal Circuit decided there was no actual controversy because an evidentiary hearing had established that defendant had not threatened to sue plaintiff's customers. *Id.* at 981. The court did not, as defendants claim, hold that jurisdiction for a declaratory judgment can never be predicated on an indemnification agreement. *See id.* (holding only that an "agreement to defend or indemnify a third person does not provide the actual controversy whereby the defender or indemnitor may bring a declaratory action on its own behalf when there is no actual

controversy involving the indemnitee"). The parties have stipulated for purposes of this motion that defendants have accused several of plaintiffs' customers of infringing a number of defendants' patents. Thus, *BP Chemicals* does not apply.

Defendants further argue that the Court does not have jurisdiction over Counts I and X because they do not raise a federal question. Defendants base their assertion on the rule that declaratory judgment jurisdiction is determined "by applying the well-pleaded complaint rule not to the declaratory judgment complaint, but to the action that the declaratory defendant would have brought." *Speedco, Inc. v. Estes*, 853 F.2d 909, 911 (Fed.Cir.1988) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)). Defendants' logic overlooks the fact that the action defendants "would have brought" in this case is one for patent infringement against plaintiffs' customers. This is clearly a claim which "arises under" the patent laws as contemplated by 28 U.S.C. § 1338(a).[3] Thus, the Court has subject matter jurisdiction over Counts I, X, and XI.

### 3. Counts II–VI, VIII, & IX—Fraud, Contract, Conversion, and Intentional Interference with Contractual and Business Relations Claims

■ Counts II–IV of plaintiffs' complaint allege that Papst fraudulently induced Minebea to enter into the 1995 Settlement Agreement by misrepresenting the nature and scope of the patents listed in Appendix III of the Agreement and otherwise breached its fiduciary obligation to plaintiffs. Count VI requests reformation of the Settlement Agreement, and Count V alleges that defendants converted patents which, according to agreements executed during the joint venture, should have been assigned to plaintiffs.

Section 1338(a) jurisdiction extends only to those cases where "[ (1) ] a well-pleaded complaint establishes ... that federal patent law creates the cause of action[,] or [ (2) ] ... plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–09, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). According to the Federal Circuit, "[i]t is well-settled that if the patentee pleads a cause of action based on rights created by a contract, or on the common law of torts, the case is not one 'arising under' the patent laws." *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed.Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 338, 139 L.Ed.2d 262 (1997). Plaintiffs nonetheless argue that their fraudulent concealment and negligent misrepresentation counts "arise under" the patent laws because Minebea will have to prove that Papst's representations regarding the scope of various patents were false. It is not, however, sufficient that plaintiffs' claims allege a single theory under which resolution of a patent law question is essential. If there are "reasons completely unrelated to the provisions and purposes of the patent law why the plaintiff may or may not be entitled to the relief it seeks, then the claim does not 'arise under' those laws." *Christianson*, 486 U.S. at 810, 108 S.Ct. 2166 (internal quotation omitted). One of plaintiffs' theories of fraud and negligent misrepresentation is that defendants concealed the fact that certain patents included in Appendix III had previously been licensed to Minebea. *See* Compl. ¶¶ 92 & 99. Counts II and III do not, therefore, arise under the patent laws.[4]

■ Nor does the Court have § 1338(a) jurisdiction over plaintiffs' conversion claim or reformation request. "The scope of a licensed patent may control the scope of a

---

3. Section 1338(a) provides, in relevant part, that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."

4. Count IV, claiming a breach of a fiduciary relationship, and Counts VIII & IX, alleging intentional interference with contractual and business relationships, also do not "arise under" the patent laws for the aforementioned reasons.

license agreement, but that rule of contract law cannot possibly convert a suit for breach of contract into one 'arising under' the patent laws as required to render the jurisdiction of the district court based on section 1338." *Ballard Medical Prods. v. Wright,* 823 F.2d 527, 530 (Fed.Cir.1987); *see also Jim Arnold,* 109 F.3d at 1572 ("[T]he question of who owns the patent rights and on what terms typically is a question exclusively for state courts."); *Beghin–Say Int'l, Inc. v. Ole–Bendt Rasmussen,* 733 F.2d 1568, 1571 (Fed. Cir.1984) (stating that "agreements to assign future patent applications does not convert a contract dispute ... to a federal question appropriate for determination in a federal court"). The only time a contract claim arises under the patent laws is when the question of patent infringement is a necessary element of the case. *See, e.g., Scherbatskoy v. Halliburton Co.,* 125 F.3d 288, 291 (5th Cir.1997); *Datapoint Corp. v. VTel Corp.,* 42 U.S.P.Q.2d 1793, 1795 (S.D.N.Y. 1997). Since plaintiffs' conversion and reformation claims do not require a determination of patent infringement, they do not "arise under" the patent laws.

■ Though the Court does not have original jurisdiction over these claims, it nonetheless may exercise supplemental jurisdiction over them pursuant to 28 U.S.C. §§ 1338(b) and 1367(c). Defendants urge the Court to decline jurisdiction, arguing that the common law counts raise novel and complex issues of state and foreign law and substantially predominate over the federal claims in this case.

With respect to plaintiffs' fraud, contract, fiduciary, and conversion claims, the Court exercises its supplemental jurisdiction under § 1367(a). The laws implicated are not so complex as to justify the Court's declining to exercise jurisdiction over these claims, which derive from the same "common nucleus of operative fact" as plaintiffs' federal claims.

5. Both parties cite D.C. law as controlling this issue.

6. Defendants also argue that neither 35 U.S.C. § 293 nor Federal Rule of Civil Procedure 4(k)(2) provides a basis for service of process on defendants, and therefore that plaintiffs' complaint must be dismissed for lack of personal jurisdiction. Defendants admit that their argument de-

*See* 28 U.S.C. § 1367(c); *United Mine Workers of Amer. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Moreover, it is prudent, in the interests of judicial economy, that the Court adjudicate these claims; portions of plaintiffs' federal claims likely will depend on whether the Settlement Agreement should be set aside due to fraud or breach of fiduciary duty. *See Gibbs,* 383 U.S. at 726–27, 86 S.Ct. 1130.

■ With respect to Counts VIII and IX, however, the Court declines to exercise supplemental jurisdiction. The elements of a claim of intentional interference with contractual relations is currently unsettled in the District of Columbia.[5] *Compare Cooke v. Griffiths–Garcia Corp.,* 612 A.2d 1251, 1256 (D.C.1992) ("defendant's intentional procurement of the contract's breach" is an essential element of a claim of tortious interference with contractual relations), *with Equity Group, Ltd. v. Painewebber, Inc.,* 839 F.Supp. 930 (D.D.C.1993) (plaintiff must only prove that defendant intentionally interfered with the contract) (citing *Dunn v. Cox,* 163 A.2d 609, 611 (D.C.1960)), *aff'd,* 48 F.3d 1285 (D.C.Cir.1995) (*per curiam*). Since plaintiffs only allege that defendants "intentionally increased the burdens on Plaintiffs under one or more of [the] contracts," Compl. ¶ 132, this unsettled aspect of D.C. law will be at the forefront of the dispute between the parties. *See Edmondson & Gallagher v. Alban Towers Tenants Ass'n,* 48 F.3d 1260, 1266 (D.C.Cir.1995) (noting the conflict in D.C. law and suggesting that when "the entire tortious interference with contract claim may turn on this issue," district courts should decline to exercise supplemental jurisdiction). The Court also declines to exercise supplemental jurisdiction with respect to Count IX, since the tort of intentional interference with business relations requires proof of elements similar to tortious interference with contractual relations.[6] *Compare Cooke,* 612 A.2d at

pends upon the Court's finding that there are no federal questions generally, or patent questions specifically, in plaintiffs' complaint. *See* Defs.' Reply at 16. Because plaintiffs' complaint contains both patent and Lanham Act claims, and defendants have stipulated that, for the purposes of this motion, they have sufficient contacts with "the United States as a whole, and with each state and the District of Columbia ... such that

1256, *with Genetic Sys. Corp. v. Abbott Labs.*, 691 F.Supp. 407, 422–23 (D.D.C.1988).

## B. *Rule 12(b)(6)*

Defendants next contend that the Court should dismiss Counts I–III, VI, VII, X, and XI of plaintiffs' complaint for failure to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). Claims may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994). All factual allegations in plaintiffs' complaint are taken to be true, and the Court gives plaintiffs the benefit of every favorable inference that may be drawn from their allegations of fact.[7] *Kowal*, 16 F.3d at 1276.

## 1. Counts I, VII, X, and XI—Real Party in Interest Under Federal Rule of Civil Procedure 17(a)

Defendants argue that Counts I, VII, X, and XI should be dismissed because plaintiffs are not the "real party in interest" for those claims. *See* Fed.R.Civ.P. 17(a). According to the 1966 Committee Notes, "the modern function of the rule ... is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to ensure generally that the judgment will have its proper effect as res judicata." *Id.* As previously discussed, plaintiffs have a real interest in the controversies underlying the declaratory judgments. In addition, there is no risk that defendants may face duplicative litigation from plaintiffs' customers, since the declaratory judgments are designed to pre-empt patent infringement actions by defendants.[8] Counts I, VII, X, and XI, therefore, are not dismissed under Rule 17(a).[9]

---

service of process pursuant to [Rule] 4(k)(2) is consistent with the Constitution and laws of the United States," it follows that the assertion of personal jurisdiction over both Georg Papst and Papst Licensing is proper. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998); *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 4 (D.C.Cir.1977).

7. In addition to the grounds discussed below, defendants have suggested that Counts II–VI of plaintiffs' complaint should be dismissed on collateral estoppel grounds due to a recently-decided German case which allegedly decides many of the factual issues in this case. However a res judicata or collateral estoppel defense may only be the basis for a Rule 12(b)(6) motion to dismiss if the preclusive effect of the prior decision is apparent on the face of the complaint. *See Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886–87 (3d Cir.1997). Because defendants' collateral estoppel argument in this case would require the Court to look outside the pleadings, it cannot be considered on a motion to dismiss. Moreover, it would not be appropriate to convert defendants' motion to dismiss into a motion for summary judgment at this stage of the litigation because the Court does not have before it all the information necessary to determine properly whether the German case cited by defendants may be given preclusive effect in this litigation. *See* Fed.R.Civ.P. 12(b) (discussing when a motion to dismiss may be converted into a motion for summary judgment); *Spilker v. Hankin*, 188 F.2d 35, 38–39 (D.C.Cir.1951) (noting that the res

judicata effect of foreign judgments must sometimes be weighed against competing interests and policies); *Gordon and Breach Science Publishers S.A., STBS, Ltd. v. American Institute of Physics*, 905 F.Supp. 169, 179 (S.D.N.Y.1995) (refusing to give preclusive effect to Swiss and German judgments after weighing a number of factors).

8. Defendants also contend that plaintiffs are not the proper party to litigate Count VII, but the Court rejects that argument because plaintiffs are clearly the party interested in prosecuting alleged false commercial representations about their products.

9. For similar reasons, plaintiffs' customers are not indispensable parties for Counts I, VII, X, & XI. *See* Fed.R.Civ.P. 19. A necessary party under Rule 19(a) is defined as an individual (1) in whose absence complete relief cannot be accorded among the already existing parties, (2) whose ability to protect his interest may be adversely affected absent joinder, or (3) whose absence may "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." *Id.* Plaintiffs' customers do not fall within this definition because they are not needed to provide complete relief to plaintiffs, and defendants will not be in danger of multiple obligations since plaintiffs' customers would only ever raise the issues in this case as a defense to a suit by defendants. Moreover, even if plaintiffs' customers were necessary parties, dismissal is only proper if the missing

## 2. Counts II, III, & VI[10]

Defendants first allege that plaintiffs have not pled their fraud claims with sufficient particularity, stating "it is impossible to identify where the alleged fraud occurred because one of the elements of fraud is reliance and there is no explanation in Minebea's Complaint of who allegedly relied on any of Papst's statements, or how they allegedly relied on Papst's statements." *See* Defs.' Mot. To Dismiss at 40; *see also* Fed.R.Civ.P. 9(b). The Court disagrees with defendants' characterization of plaintiffs' complaint. The complaint clearly indicates that Minebea relied on statements and letters both during and subsequent to the joint venture which contained misrepresentations regarding the scope of various Papst patents, and that the misrepresentations ultimately led Minebea to be deceived regarding the terms of the 1995 Settlement Agreement.[11]

Defendants further assert that plaintiffs fail to state a claim for fraud or negligent misrepresentation because (1) the representations at issue are opinions, and (2) Minebea was represented by its own attorneys and must be presumed to have knowledge of the contracts it signed. Plaintiffs' complaint, however, contains sufficient allegations of factual misrepresentations to support a fraud claim, even if some of the alleged fraudulent statements may be characterized as opinions.[12] Furthermore, it cannot be said at this stage of the case that Minebea was not justified in relying upon statements made by defendants regarding the scope of the contracts. It is true that when a plaintiff has the means of knowing, by the exercise of ordinary intelligence, the truth, he is barred as a matter of law from asserting justifiable reliance. *Thomas v. N.A. Chase Manhattan Bank*, 1 F.3d 320, 324 (5th Cir.1993) (applying New York law); *Jack Kent Cooke, Inc. v. Saatchi & Saatchi North America*, 222 A.D.2d 334, 635 N.Y.S.2d 611, 613 (1995). However, whether plaintiffs could have discovered the truth about a matter through the "exercise of ordinary intelligence" is a question of fact. *See Black v. Chittenden*, 69 N.Y.2d 665, 669, 511 N.Y.S.2d 833, 503 N.E.2d 1370 (N.Y. 1986). Plaintiffs have alleged that they were kept from discovering some of these misrepresentations because defendants "appropriated for themselves the books and records of PMDM that were created during the period of the joint venture and have refused to provide timely access to these records." Compl. ¶ 93. Plaintiffs also allege that their reliance on defendants' representations was consistent with the "exercise of ordinary intelligence" because of the special fiduciary relationship that existed between the parties. *See Thomas*, 1 F.3d at 324; *see also Ahern v. Scholz*, 85 F.3d 774, 794–95 (1st Cir.1996) (fiduciary relationship may be based on prior business dealings) (citing, *inter alia, Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50, 529 N.Y.S.2d 279, 283 (N.Y.App.Div.1988)).

parties are "indispensable." *See* Fed.R.Civ.P. 19(b); *Wichita and Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 774 (D.C.Cir.1986). Plaintiffs' customers are clearly not "indispensable" based on the factors set forth in Rule 19(b).

10. The parties agree that New York law applies to the allegations of fraud and negligent misrepresentation and the request for contract reformation.

11. For example, the complaint states that in a June 25, 1991, letter, Papst "falsely represented to Minebea that certain patents had not been previously licensed to Minebea and were 'reserved solely for Papst's exploitation,'" and that Minebea "reasonably relied upon these representations ... in all of its subsequent discussions and dealings with Georg Papst." Compl. ¶ 49. Plaintiffs further allege that the 1995 Settlement Agreement was affected by a provision in a previous agreement (the "Alteration Agreement") carving out "Drive Patents" from Minebea's license, a provision which Minebea claims was included based upon its reliance on "misleading representations by Georg Papst and Papst Licensing to Minebea that neither U.S.Patent No. Re. 32,702 nor German Patent 29 44 212" was included in a previous agreement between the parties. Compl. ¶ 56–59.

12. Even if the statements were all opinions, New York law provides that "statements of opinion may constitute actionable fraud where a present intent to deceive exits." *Magnaleasing, Inc. v. Staten Island Mall*, 563 F.2d 567, 569 (2d Cir. 1977) (citing *Gray v. Richmond Bicycle Co.*, 167 N.Y. 348, 60 N.E. 663 (1901)); *see also West Side Fed. S & L Ass'n v. Hirschfeld*, 101 A.D.2d 380, 476 N.Y.S.2d 292, 295 (1984). Plaintiffs' complaint alleges that Papst intended to deceive plaintiffs when he made these statements.

Plaintiffs' fraud and negligent misrepresentation claims may not, therefore, properly be disposed of on a motion to dismiss.

### 3. Count I—Patent Exhaustion Claim

Plaintiffs' patent exhaustion claim also may not be dismissed at this stage of the proceeding. One aspect of the patent exhaustion doctrine provides that when a patent holder sells "an incomplete product that has no substantial use other than to be further manufactured into a completed patented and allegedly infringing article," the patent holder cannot claim that the final product infringes his patent. *Cyrix Corp. v. Intel Corp.*, 846 F.Supp. 522, 540 (E.D.Tex.), *aff'd* 42 F.3d 1411 (Fed.Cir.1994); *see also United States v. Univis Lens Co.*, 316 U.S. 241, 250–51, 62 S.Ct. 1088, 86 L.Ed. 1408 (1942); *Hewlett–Packard Co. v. Repeat–O– Type Stencil Mfg. Corp.*, 123 F.3d 1445, 1455 (Fed.Cir.1997) ("[W]hen a patentee sells a device without condition, it parts with the right to enforce any patent that the parties might reasonably have contemplated would interfere with the use of the purchased device."), *cert. denied,* —— U.S. ——, 118 S.Ct. 1304, 140 L.Ed.2d 470 (1998). Plaintiffs have alleged that the HDD spindle motors have no use other than to create hard disk drives; therefore they state a viable patent exhaustion claim.

Defendants assert that plaintiffs cannot, as a matter of law, raise a patent exhaustion claim because there is express language in the Settlement Agreement contracting out of the patent exhaustion doctrine. *See* Settlement Agreement ¶ 2.2; *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 708 (Fed. Cir.1992) (patent owners can place a lawful restriction on the use of their patented product). Defendants' position may prove to be correct after further discovery in this case. However, at this stage there is an issue of fact as to whether that clause was designed to contract out of the patent exhaustion doctrine. In addition, plaintiffs have raised issues of fraud in the creation of the Settlement Agreement, which ultimately may preclude defendants from relying on its provisions as a bar.

### 4. Count VII—Lanham Act Claim

"To survive a motion to dismiss . . . on a Lanham Act claim, a plaintiff must allege that defendants made statements of fact in their commercial advertising or promotion that were (1) false or misleading, (2) actually or likely deceptive, (3) material in their effects on buying decisions, (4) connected with interstate commerce, and (5) actually or likely injurious to the plaintiff." *Dial A Car, Inc. v. Transportation, Inc.*, 884 F.Supp. 584, 592 (D.D.C.1995), *aff'd,* 82 F.3d 484 (D.C.Cir.1996); *see also ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 964 (D.C.Cir.1990). Plaintiffs allege that Papst "falsely inform[ed] [plaintiffs'] customers that [plaintiffs] are not licensed under any of the Asserted Papst Patents, or although licensed to make and sell motors under the Asserted Papst Patents, their use by such customers for their sole intended use in a hard disk drive assembly constitutes patent infringement." Compl. ¶ 30. Defendants' statements appear to be "commercial advertising and promotion" because they were disseminated to the "relevant public"—plaintiffs' customers—and allegedly designed to convince those customers that they needed an additional license from defendants to use the device sold to them by plaintiffs. *See Seven– Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1385– 86 (5th Cir.1996); *Riggs Inv. Mgmt. Corp. v. Columbia Partners, LLC,* 966 F.Supp. 1250, 1267 (D.D.C.1997). Finally, plaintiffs allege that defendants' statements affected plaintiffs' sales of their products. Compl. ¶ 126; *see also Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989) (plaintiff need not be in direct competition with defendant but need only show a "reasonable interest to be protected" from the false commercial statements); *PPX Enters. v. Audiofidelity, Inc.*, 746 F.2d 120, 125 (2d Cir.1984) (same). Count VII, therefore, states a claim under the Lanham Act.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss Counts I–VII and X–XI of plaintiffs' complaint is denied. Counts VIII and IX of plaintiff's complaint are dismissed without prejudice for lack of subject matter

jurisdiction. An appropriate Order accompanies this Opinion.

## ORDER

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that defendants' motion to dismiss Counts I–VII and X–XI of plaintiffs' complaint is denied. It hereby further is

ORDERED, that Counts VIII and IX of plaintiffs' complaint are dismissed without prejudice for lack of subject matter jurisdiction.

SO ORDERED.