**LASER DIODE ARRAY, INC., Plaintiff,**

v.

**PARADIGM LASERS, INC., Defendant.**

**No. 96–CV–6581L.**

United States District Court,
W.D. New York.

May 6, 1997.

Mark H. Fandrich, Karpinski, Stapleton & Fandrich, P.C., Auburn, NY, for plaintiff and counter-defendant.

Paul J. Yesawich, III, Rochester, NY, Ronald J. Kisicki, Neal L. Slifkin, Harris, Beach & Wilcox, Syracuse, NY, Robert J. Bird,

Robert J. Bird Law Firm, Penfield, NY, for defendant and counter-claimant.

### DECISION AND ORDER

LARIMER, Chief Judge.

This is a patent infringement case. Plaintiff, Laser Diode Array, Inc. ("LDAI"), alleges that it is the holder of United States Patent No. 5,128,951 ("the '951 patent"), which was issued on July 7, 1992 and is entitled, "Laser Diode Array and Method of Fabrication Thereof." LDAI alleges that defendant Paradigm Lasers, Inc. ("Paradigm") has infringed the '951 patent by virtue of its manufacture, use, sale, and offer for sale of laser diode arrays that infringe one or more claims of the '951 patent. LDAI seeks damages, injunctive and other equitable relief, declaratory relief, and attorney's fees and costs.

LDAI has moved to strike Paradigm's fourth affirmative defense and to dismiss Paradigm's second and third counterclaims. Paradigm has cross-moved for leave to amend its answer and counterclaims.

## FACTUAL BACKGROUND

LDAI is in the business of manufacturing and selling laser diode arrays, which are small devices that are used to generate laser light for a variety of applications. LDAI alleges that it holds the first issued patent to disclose and claim a laser diode array, and that the '951 patent is a follow-on to that first patent. LDAI claims that the structure that it designed and patented has made the manufacture of laser diode arrays much simpler.

At one time, LDAI and Paradigm did business with each other. Paradigm is in the business of making diode-pumped solid-state lasers, which use laser diode arrays. After its incorporation in 1992, Paradigm contracted with LDAI to mount laser diode bars that Paradigm had purchased into laser diode arrays. Paradigm contends that these arrays were two-dimensional ("2D") arrays. According to Paradigm, in 1993, it began developing a three-dimensional ("3D") array that generated a more efficient beam of light than the 2D arrays assembled by LDAI. In February 1995, Paradigm applied for a patent for a 3D system, which was issued on May 28, 1996. Paradigm applied for a second patent on an improved 3D design in March 1995.

Sometime after March 1995, LDAI's president, Arthur A. Karpinski, met with Timothy Irwin, president of Paradigm. According to LDAI, Karpinski arranged this meeting because he had learned that Paradigm was producing laser diode arrays that infringed the '951 patent. Paradigm contends that Irwin set up the meeting to explain to Karpinski that Paradigm no longer needed LDAI's 2D arrays because Paradigm had developed a superior 3D array. It appears that Karpinski and Irwin may have expressed some disagreement at that meeting about whether Paradigm's array violated the '951 patent, but nothing concrete emerged from the meeting other than the fact that Paradigm would no longer be buying arrays from LDAI.

The next significant event occurred in January 1996, when Irwin wrote a letter to Karpinski stating that he had recently been told by someone in the industry that LDAI was claiming that Paradigm was infringing LDAI's patents in some way. Irwin asked Karpinski for his "assurance that you do not hold the view that my company is in any way infringing your company's patent rights." Karpinski Affidavit (Attachment A to Plaintiff's Memorandum of Law), Ex. A.

Karpinski responded in a letter dated January 30, 1996. He told Irwin that "[b]ased on the views we exchanged during [their mid-1995] meeting, I am sure you can appreciate that I cannot give you the assurance that you request in your letter." Karpinski Affidavit Ex. B. Some additional correspondence followed, but the parties' positions remained unchanged. LDAI commenced the instant action on June 12, 1996.

## DISCUSSION

### I. Plaintiff's Motion to Strike, and Defendant's Motion to Amend, Fourth Affirmative Defense

LDAI moves pursuant to Rule 12(f) of the Federal Rules of Civil Procedure to strike Paradigm's fourth affirmative defense, which alleges: "On information and belief, through communications between Plaintiff and Defendant, Plaintiff induced Defendant into believing that Plaintiff would not pursue a patent

infringement action against Defendant," and that LDAI is therefore "barred from recovery in this action based on the doctrine of Estoppel." Answer ¶¶ 12, 13. LDAI contends that these allegations are insufficient to support a defense of estoppel.

In response, Paradigm has moved for leave to amend its answer. The proposed amended answer contains additional factual allegations to support the estoppel defense, stating that at a meeting in early 1995, Irwin disclosed to Karpinski Paradigm's new 3D array, and that "Karpinski only briefly mentioned his patent, but did not pursue further any allegations of infringement." The answer further alleges that "[d]uring the several months that followed, Karpinski had several opportunities to assert an infringement claim against Paradigm, but never did," that "[d]uring that period of silence, Paradigm continued to pour money and resources into the 3D laser diode project to develop the design, manufacture components, and create a market for the new product," and that "more than one year later, plaintiff commenced this action against Paradigm." Amended Answer ¶¶ 13–16. Paradigm has also submitted an affidavit of Irwin further detailing these allegations.

LDAI contends that these allegations are still insufficient to support an estoppel defense. LDAI asserts that there is no basis for an allegation of "misleading silence" by LDAI, that there is no indication that LDAI ever indicated to Paradigm that it was dropping its patent infringement claim, and that Paradigm has not alleged that it relied on any statements or silence on LDAI's part.

 Motions to strike a defense are not favored by the courts, *William Z. Salcer, Panfeld, Edelman v. Envicon Equities,* 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986), and will only be granted "when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1057 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). *See also Index Fund, Inc. v. Hagopian,* 107 F.R.D. 95, 100 (S.D.N.Y.1985) (motion to strike defense may be granted "if the

defense asserted is clearly insufficient as a matter of law"); *cf. Carter–Wallace, Inc. v. Riverton Lab., Inc.,* 47 F.R.D. 366, 367 (S.D.N.Y.1969) (motion to strike a defense will be denied if defense is sufficient as a matter of law). A motion to strike an affirmative defense will not be granted, therefore, unless it appears to a certainty that the plaintiff would succeed despite any state of the facts which could be proved in support of the defense. *Salcer,* 744 F.2d at 939.

As stated, the fourth affirmative defense is based upon the theory of equitable estoppel. The Federal Circuit has adopted the following statement of the elements of equitable estoppel as "a reasonable and fairly complete distillation from the case law":

> An [equitable] estoppel case ... has three important elements. [1] The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. [2] The other relies upon that communication. [3] And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1041 (Fed.Cir.1992) (quoting D.B. Dobbs, *Handbook on the Law of Remedies* § 2.3, at 42 (1973)) (brackets in original).

 I find that the fourth affirmative defense, as set forth in Paradigm's proposed amended answer, is sufficient on its face to allege these three elements. First, although the defense relies primarily on LDAI's alleged silence rather than on any affirmative representations that LDAI would not pursue a patent infringement claim, "[t]here is ample ... precedent that equitable estoppel may arise where, coupled with other factors, a patentee's 'misleading conduct' is essentially misleading *inaction.*" *Aukerman,* 960 F.2d at 1042. I recognize that "plaintiff's inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned." *Id.; see also In re Meyers v. Asics Corp.,* 974 F.2d 1304, 1308

(Fed.Cir.1992) (silence alone does not constitute misleading conduct). Typically, those "other facts" are that the patentee threatened immediate enforcement of its patent right, but then did nothing for a long time. *Meyers,* 974 F.2d at 1309. It is possible that Paradigm will ultimately fail to show such other facts to support this defense. Nevertheless, the parties do not appear to agree on all the facts concerning their relationship and contacts with each other prior to LDAI's commencement of this suit, and I am therefore unable to conclude to a certainty that Paradigm will not be able to establish this element. *Salcer,* 744 F.2d at 939.

LDAI also contends that Paradigm has not alleged reliance, the second element of the defense. The amended answer, however, alleges that "[d]uring [LDAI's] period of silence, Paradigm continued to pour money and resources into the 3D laser diode project to develop the design, manufacture components, and create a market for the new product." Amended Answer ¶ 15. The clear implication of this allegation is that Paradigm spent time and money on the project because it inferred from LDAI's silence that LDAI was not going to press a patent infringement claim. Again, it cannot be said at this juncture that Paradigm will be unable to establish this element.

LDAI does not contend that Paradigm has not alleged the third and final element, material prejudice, and it is clear that Paradigm's "change of economic position" could support this element. *Aukerman,* 960 F.2d at 1043.

I am also not persuaded by LDAI's assertion that the allegations of misleading conduct fail to comply with the pleading requirements of Rule 9(b). Since the defense is based primarily on LDAI's silence, it would be unreasonable to expect Paradigm to plead the relevant facts with greater particularity. The motion to strike the fourth affirmative defense is therefore denied.

## II. Plaintiff's Motion to Dismiss, and Defendant's Motion to Amend, Second Counterclaim

LDAI moves to dismiss Paradigm's second counterclaim under Rule 12(b)(6). This counterclaim alleges on information and belief that "in late 1995 or early 1996, LDAI contacted at least one diode bar supplier to induce the supplier to discontinue sales of the diode bars to Paradigm," and that Paradigm has been damaged by LDAI's conduct. Answer ¶¶ 18, 22. Based on those allegations, Paradigm asserts a counterclaim of unfair competition under New York law. LDAI contends that Paradigm has failed to plead sufficient facts to support this claim.

In response, Paradigm has moved for leave to amend the counterclaim. As amended, the second counterclaim asserts both an unfair-competition claim under New York law, and a claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The amended answer alleges that LDAI contacted at least one of Paradigm's customers, Lumonics, and induced Lumonics not to purchase 3D arrays from Paradigm because Paradigm's arrays violated LDAI's patent. Paradigm alleges that: Karpinski knew that those representations were false, and that they would cast false doubt in the customer's mind about Paradigm's products; the representations were made in the context of commercial promotion; and the representations were made in bad faith because Karpinski knew that LDAI's patent did not cover 3D arrays. Paradigm alleges that it has been damaged by those actions because it lost the sale of 3D arrays to Lumonics and others. Amended Answer ¶¶ 22–27.

LDAI contends that the amended counterclaim still fails to state a valid claim. In particular, LDAI asserts that Paradigm has not pleaded any facts showing a likelihood of confusion as a result of LDAI's alleged actions, or any attempt by LDAI to take away Paradigm's customers.

Section § 43(a) of the Lanham Act subjects to civil liability

[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, or geographic origin of his or her or another person's goods, services, or commercial activities . . .

The Second Circuit has stated that "the statute is intended to be broadly construed," *National Ass'n of Pharmaceutical Mfrs. v. Ayerst Lab.*, 850 F.2d 904, 914 (2d Cir.1988). "Although early judicial interpretations of this section restricted its applicability, section 43(a) subsequently has been employed successfully to combat a wide variety of deceptive commercial practices." *PPX Enterprises v. Audiofidelity Enterprises*, 818 F.2d 266 (2d Cir.1987) (citation omitted).

■■■ The common-law tort of unfair competition is similar to an unfair-competition claim under the Lanham Act. "The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another." *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980). "Common law unfair competition claims closely parallel Lanham Act unfair competition claims; to the extent that they may be different, the state law claim may require and additional element of bad faith or intent." *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F.Supp. 1259, 1283 (S.D.N.Y. 1990) (citing *815 Tonawanda St. Corp. v. Fay's Drug Co.*, 842 F.2d 643 (2d Cir.1988)). "Although at one time the law of unfair competition was limited to claims that one party had attempted to pass off his goods as those of another party, unfair competition is now held to encompass a broader range of unfair practices which may be generally described as a misappropriation of the skill, expenditures, and labor of another." *American Footwear Corp. v. Gen'l Footwear Co.*, 609 F.2d 655, 662 (2d Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). The tort is not all-encompassing, however; the New York Court of Appeals, rejecting the notion that unfair competition is equivalent to the "amorphous term 'commercial unfairness,'" has stated that "misappropriation of another's commercial advantage [is] a cornerstone of the tort." *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 668, 439 N.Y.S.2d 858, 422 N.E.2d 518 (1981). Nevertheless, there are many forms that such misappropriation can take. Commenting on this in *Roy Export Co. Establishment v. C.B.S.*, 672 F.2d 1095 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), the Second Circuit observed that:

New York courts have noted the "incalculable variety" of illegal practices falling within the unfair competition rubric, calling it a "broad and flexible doctrine" that depends "more upon the facts set forth . . . than in most causes of action." It has been broadly described as encompassing "any form of commercial immorality," or simply as "endeavoring to reap where [one] has not sown"; it is taking "the skill, expenditures and labors of a competitor," and "misappropriati[ng] for the commercial advantage of one person . . . a benefit or 'property' right belonging to another." The tort is adaptable and capricious.

*Id.* at 1105 (citations omitted).

■■■ I find that as amended, the second counterclaim adequately alleges the elements of a claim for unfair competition under both the Lanham Act and the common law. There is case authority that allegations that a party falsely represented to a business's customers that the business was infringing on the party's patent rights will support such claims. *See, e.g., Laitram Machinery, Inc. v. Carnitech A/S*, 901 F.Supp. 1155, 1162 (E.D.La.1995) (issues of fact concerning plaintiff's allegation that defendant made false representations to plaintiff's customers that plaintiff had infringed defendant's patent rights precluded summary judgment for defendant on plaintiff's Lanham Act claim); *Larami Corp. v. Amron*, 36 U.S.P.Q.2d 1073, 1084 (E.D.Pa.1995) (evidence at trial showing that defendant sent letters to plaintiff's customers threatening legal action for patent and trademark infringement against anyone

buying or selling plaintiff's products, and that defendant's claims of patent and trademark rights were false, supported jury's verdict for plaintiff on Lanham Act claim); *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 827 F.Supp. 957, 964–65 (S.D.N.Y.1993) (granting summary judgment for defendant on plaintiff's unfair-competition claim based on allegation that defendant made false representations to plaintiff's customers that plaintiff was infringing defendant's patent, but recognizing that claim would be viable if plaintiff adduced facts to support it); *Repap Enterprises Inc. v. Kamyr Inc.*, 27 U.S.P.Q.2d 1685, 1690 (E.D.Pa.1993) (defendant's false claim to patent rights in plaintiff's trade secrets violated Lanham Act); *Brandt Consolidated, Inc. v. Agrimar Corp.*, 801 F.Supp. 164, 170 (C.D.Ill.1992) (denying motion to dismiss Lanham Act claim based on allegation that defendant sent false patent infringement letters to plaintiff and its customer).

■ I note, however, that a claim under the Lanham Act must allege that the party bringing the claim is involved in interstate business, and that the defendant's actions affected its business; *see Demetriades v. Kaufmann*, 698 F.Supp. 521, 524 (S.D.N.Y. 1988). Paradigm has not made those allegations, although it appears from the record that Paradigm does business with companies in other states; *see* Irwin Affidavit Ex. D (letter to Paradigm from Gateway Photonics Corporation in St. Charles, Missouri). Assuming that Paradigm is able to make those allegations, then, the motion to amend the second counterclaim to add a claim under the Lanham Act is granted, and LDAI's motion to dismiss the second counterclaim is denied.[1]

## III. Plaintiff's Motion to Dismiss, and Defendant's Motion to Amend, Third Counterclaim

Paradigm also seeks to amend the third counterclaim, which alleges tortious interference with contracts, prospective contracts, and business relations. LDAI concedes that the third counterclaim, as amended, does

state a claim for tortious interference with prospective business relations, and does not oppose Paradigm's motion to amend to the extent that Paradigm pleads that claim. LDAI still maintains, however, that the amended counterclaim fails to state a claim for tortious interference with contract.

As amended, the third counterclaim alleges that "[i]n late 1995 or early 1996, plaintiff contacted at least one diode bar supplier, Gateway Phonotics Corporation, in an attempt to interfere with Paradigm's contract and its business relationship with Gateway by inducing Gateway to discontinue sales of laser diode bars to Paradigm." Paradigm alleges that at that time, "Gateway was under contract with Paradigm to fill several purchase orders for laser bars," and that LDAI was aware of the contract. Paradigm alleges that Karpinski knew that his actions were dishonest because LDAI in fact had no patent rights to Paradigm's 3D arrays, and that Paradigm was damaged by Karpinski's actions because "Gateway's agreement to provide Paradigm with a continuous supply of laser diode bars was reduced to an agreement to sell bars only on an order by order basis." Amended Answer ¶¶ 30–33.

■ To state a claim for tortious interference with contract, Paradigm must allege that LDAI "intentionally and through improper means induced the breach of a contract between [Paradigm] and a third party." *WFB Telecommunications, Inc. v. NYNEX Corp.*, 188 A.D.2d 257, 590 N.Y.S.2d 460 (1st Dep't 1992) (citing *Guard–Life Corp. v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 196, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980)), *leave to appeal denied*, 81 N.Y.2d 709, 599 N.Y.S.2d 804, 616 N.E.2d 159 (1993); *Kaminski v. United Parcel Service*, 120 A.D.2d 409, 501 N.Y.S.2d 871 (1st Dep't 1986). Paradigm has not done so. The amended answer states only that "Gateway's agreement to provide Paradigm with a continuous supply of laser diode bars was reduced to an agreement to sell bars only on an order by order basis." Amended Answer ¶ 33. This vague statement is amplified

[1]. Paradigm's amended answer was filed by the Clerk of the Court on March 27, 1997. Since Paradigm's motion for leave to amend was pend- ing at that time, that filing was in error, and that document is stricken from the docket.

somewhat by Irwin's affidavit and an attached exhibit, which indicate that Gateway initially stated to Paradigm that it would honor its existing contract to fill two purchase orders from Paradigm, but would not accept future orders. Irwin Affidavit Ex. D. Irwin states that "[a]fter [Irwin's] giving Gateway further assurances, it agreed to consider future orders for laser diode bars, but only on an individual basis." Irwin Affidavit ¶ 21. There is no allegation, then, that a contract between Paradigm and a third party was breached, much less that LDAI induced a breach. To the extent that Paradigm asserts a claim for tortious interference with contract, then, LDAI's motion to dismiss the third counterclaim is granted, and Paradigm's motion to amend the third counterclaim is denied.

### CONCLUSION

Plaintiff's motion to strike the fourth affirmative defense and to dismiss defendant's second and third counterclaims (Item 24) is granted in part and denied in part. The motion to dismiss the third counterclaim is granted to the extent that the third counterclaim asserts a cause of action for tortious interference with contract. In all other respects, plaintiff's motion is denied.

Defendant's cross-motion for leave to amend its answer and counterclaims (Item 29) is granted in part and denied in part. Defendant's motion to amend the fourth affirmative defense and the second counterclaim is granted. Defendant's motion to amend the third counterclaim is granted, except to the extent that defendant seeks to assert a cause of action for tortious interference with contract. To that extent, defendant's motion is denied.

The amended answer filed on March 27, 1997 (Item 31) is hereby stricken from the docket. Defendant shall have fourteen (14) days from the date of entry of this Decision and Order to file a new amended answer consistent with this Decision and Order.

IT IS SO ORDERED.