**THE GLEASON WORKS, Plaintiff,**

v.

**OERLIKON GEARTEC, AG
and Liebherr–America,
Inc., Defendants.**

**No. 98–CV–6275L.**

United States District Court,
W.D. New York.

March 30, 2001.

---

## DECISION AND ORDER

LARIMER, Chief Judge.

### PROCEDURAL BACKGROUND

Plaintiff The Gleason Works ("Gleason") brought this patent infringement action against defendants Klingelnberg–Oerlikon Geartec Vertriebs–GmbH ("Klingelnberg")[1], Oerlikon Geartec, AG ("Oerlikon") and Liebherr–America, Inc. ("Liebherr"). Gleason alleges that it is the holder of United States Patent No. 4,981,402 ("the 402 patent"), which was issued on January 1, 1991 and is entitled, "Multi–Axis Bevel and Hypoid Gear Generating Machine." Gleason's complaint alleges that Klingelnberg, a German corporation, and Oerlikon, a Swiss corporation, manufacture gear-making machines that infringe the 402 patent, and that Liebherr, a Virginia corporation, sells the infringing products on behalf of Klingelnberg and Oerlikon in the United States. Gleason seeks damages, injunctive relief, declaratory relief, attorneys' fees and costs.

---

1. Pursuant to a stipulation entered between Gleason and Klingelnberg, Gleason voluntarily dismissed Klingelnberg from the action, but retained leave to reinstate Klingelnberg in the event that later-discovered facts revealed a basis for personal jurisdiction.

In their answers to the complaint, Oerlikon and Liebherr ("defendants") each denied infringing on the 402 patent, and asserted counterclaims alleging interference with business relations ("Count III"), unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) ("Count IV"), and common law unfair competition ("Count V").[2]

Gleason now moves for partial summary judgment on defendants' counterclaims contained within Counts III, IV, and V.

## FACTUAL BACKGROUND

The relevant facts are largely undisputed. Oerlikon manufactures the allegedly infringing gear-cutting machine, which is known as Model C–28. In the United States, all of Oerlikon's machines are sold exclusively through Liebherr, an independent distributor.

One particular machine led to this litigation. In October 1997, Oerlikon sent a C–28 machine to Liebherr, which accepted it on consignment for sale. The arrangement between Oerlikon and Liebherr was that if the machine were sold, Liebherr would purchase it from Oerlikon and then sell it to the customer. Liebherr displayed the machine at a trade show in Michigan in October 1997. Representatives of Oerlikon attended the show to operate the machine and answer questions.

After the show ended, the machine was placed at Liebherr's facilities in Saline, Michigan, where it was used as a demonstration machine for customers. In December 1997, Liebherr received a request to place the machine in a Buffalo, New York facility of American Axle & Manufac-

turing, Inc. ("AAM") for demonstration and testing. The machine was sent there in March 1998, and remained there for at least several months, during which time AAM compared it against a Gleason machine that had been sent by Gleason to AAM, also for testing purposes. The next significant event occurred on June 23, 1998, when Gary Kimmet, Gleason's vice-president of regional operations for the Americas wrote a letter to Robert Greene ("Greene"), the manufacturing engineering supervisor at AAM's Plant 1 in Detroit, advising him of the commencement of this patent action against Oerlikon. He stated that Gleason's machine "is being unfairly attacked by a competitor." Ex. 9, Dkt. # 59. The letter continued:

> ... we have taken steps to protect our investment in multi-axis machines by filing a patent infringement suit in the United States against Klingelnberg–Oerlikon Geartec Vertriebs–GmbH, Oerlikon Geartec, AG, and Liebherr–America, Inc. . . . [W]e have requested the court to hold that the Oerlikon C22 and C28 machines infringe our patent on multi-axis bevel gear cutting machines, and to grant us a permanent injunction against the sale and use of the Oerlikon C22 and C 28, or similar machines, in the United States.

Included with the letter was a Gleason press release announcing the commencement of the instant action.

Oerlikon's president, U. Koller, and vice-president of engineering and technology, A. Rutschke, responded in a letter dated July 1, 1998 to AAM's executive vice-presi-

---

2. Defendants' subsequent motion to amend certain of their counterclaims, including their original Count III, restyled as Count V, and their original Counts IV and V, restyled as Counts III and IV, respectively (Dkt.# 58), was denied by Magistrate Judge Jonathan Feldman by decision and order entered July 10, 2000. (Dkt.# 64). No further action was taken by defendants with respect to the denial of that motion. As a result, the proposed amended counterclaims submitted in support of that motion do not constitute current pleadings in this action.

dent of manufacturing, Joel Robinson ("Robinson"). Koller told Robinson that he considered the charges brought against Oerlikon's products to be "completely unfounded" and that he regarded the 402 patent as invalid.

## DISCUSSION

### I. General Standards

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, the burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and, in ruling on a motion for summary judgment, the Court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *McKelvie v. Cooper,* 190 F.3d 58, 61 (2d Cir.1999).

To defeat summary judgment, the non-moving party must go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, "a court's responsibility is to assess whether there are any factual issues to be tried." *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991), *citing, Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

### II. The Unfair Competition Counterclaims

Defendants assert unfair competition under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in Count IV of their counterclaims, and common-law unfair competition in Count V of their counterclaims. Gleason moves for summary judgment both on Count IV and on Count V. Section 43(a) of the Lanham Act subjects to civil liability

[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities ....

15 U.S.C. § 1125(a). The common-law tort of unfair competition is similar to an unfair competition claim under the Lanham Act. *Laser Diode Array, Inc. v. Paradigm Lasers, Inc.,* 964 F.Supp. 90, 95 (W.D.N.Y.1997). "The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another." *Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir.1980).

In the patent context, while it is not clearly established, there is at least some authority to support a claim of unfair competition against a patentee who commences a patent infringement action in bad faith. *See Spotless Enterprises, Inc. v. Carlisle Plastics, Inc.*, 56 F.Supp.2d 274 (E.D.N.Y.1999); *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573 (Fed.Cir.1993) (affirming summary judgment dismissing claim of unfair competition under state law asserted against patentee because patentee's infringement suit was not objectively baseless, but not finding such remedy was never available); *but see Pro–Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568 (Fed. Cir.1996) (finding no remedy under Lanham Act for claim that patent infringement suit was based on procurement of patent through inequitable conduct). There is also authority to support a claim of unfair competition based upon a patentee's marketplace assertions of infringement and inability to design around a patent. *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed.Cir.1999). Similar claims have been made against Gleason in this action.

## A. *The Counterclaims as They Pertain to the Commencement of this Action*

■ Defendants contend that Gleason engaged in unfair competition by filing this action without probable cause. In response, Gleason has submitted a number of affidavits and other documents suggesting that it had probable cause to bring the action. In further support of its motion, Gleason asserts that it also has probable cause to expect a favorable outcome on its infringement claims, and that as a result, its action is not objectively baseless. Moreover, Gleason invokes the presumption that a patentee brings his case in good faith, and argues that it is entitled to additional deference because defendants have the burden, by clear and convincing evidence, to show that Gleason's suit was brought without probable cause.

In opposition, defendants' principal argument is that the motion is premature because it would be more productive and less wasteful to consider the unfair competition counts after the primary issues of infringement and validity have been addressed, and that a number of fact issues remain.[3] I agree.

Delving into the issues raised by this aspect of Gleason's motion, *i.e.*, determining whether Gleason objectively had a basis to bring the lawsuit, in my view, requires an in depth examination and understanding of the 402 patent and the two machines in question, and perhaps even a resolution of the patent issues here. At this juncture, before the numerous patent issues have been fully presented to the Court, I am simply unable to decide as a matter of law issues pertaining to Gleason's motivation and intent in commencing this action. It is not altogether clear, as Gleason suggests, that such issues are less relevant if in fact there is an objective basis to bring the lawsuit. Although I agree with Gleason that defendants have a considerable task in prevailing upon their unfair competition counterclaims, both in light of Gleason's *de minimis* burden in showing probable cause and in light of the presumption that a patentee brings its action in good faith, on this state of the record, judgment, as a matter of law, at this time is not appropriate. Indeed, deter-

**3.** Defendants had also argued that the motion was premature because discovery was not yet complete on the issue; however, it is the Court's understanding that discovery is now complete, but for certain limited discovery specifically enumerated in the appropriate scheduling orders.

minations on similar claims in other cases appear to be most often made after there has been a finding either that the plaintiff's claim had no merit or at some other phase after the Court has resolved at least some of the underlying patent claims. *See, e.g., Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (determination of probable cause made after decision on merits of infringement claims).

In short, further exposition on the substantive issues is necessary to enable the Court to rule as a matter of law whether Gleason's action is objectively baseless or whether it had probable cause to sue. After further proceedings, the Court will be in a better position to evaluate the substantive issues. *See, e.g., Thermalloy, Inc. v. Aavid Engineering, Inc.*, 935 F.Supp. 63, 67 (D.N.H.1996) (holding that "the court, having already resolved the merits of Thermalloy's infringement claim, is in an unusually well-informed position to determine whether the claim was not only unsuccessful but actually meritless"). I, therefore, deny the motion without prejudice.

### B. The Counterclaims as They Pertain to Marketplace Activity

As an alternative basis for their unfair competition counterclaims, defendants charge Gleason with disparaging the nature and characteristics of defendants' products through allegedly false and misleading representations, principally items contained in Gleason's June 23, 1998 letter to AAM and other current and prospective customers. Oerlikon's Answer and Counterclaims, ¶¶ 28–33, Dkt. # 33; *see also* Liebherr's Answer and Counterclaims, ¶¶ 29–34, Dkt. # 10. In particular, defendants decry Gleason's reference to dry cutting technology in its letter because they

believe such a reference suggests that the 402 patent covered such technology, when, in fact, it did not. Defendants also interpret Gleason's letter as leading readers to the belief that Gleason's 402 patent could not be designed around by a competitor.

First of all, on its face the principal message contained in the challenged June 23 letter is Gleason's notification that it had filed a patent infringement action against the Oerlikon C28 and C22 machines. These statements are certainly factually accurate and defendant does not contend otherwise.

■ Defendants' interpretation concerning the balance of the letter cannot stand scrutiny. Even a cursory review of the letter demonstrates that it does not say what defendants suggest. To defeat summary judgment, defendants must do more than merely rest on the pleadings. Speculation and surmise are not enough for the claims to be submitted to a jury.

■ In response to Gleason's motion for summary judgment, however, defendants have failed to provide any affidavit or other admissible evidence to demonstrate that there are material issues of fact that false or misleading statements were made that would subject Gleason to liability for unfair competition. In fact, when defendants' time to respond to the summary judgment motion expired in accordance with this Court's scheduling order, defendants had submitted Gleason's one page June 23, 1998 letter to AAM as their only exhibit on this issue, and defendants' Statement of Facts in Dispute was limited to one conclusory sentence on this issue: "Gleason misrepresented defendants' bevel and hypoid gear generating machines in the marketplace." Dkt. # 59, ¶ 9. They did not submit any affidavits or deposition testimony pertaining to this subject.

Their memorandum of law is equally deficient. In it, defendants relied primarily upon two cases, *Laser Diode Array, Inc. v. Paradigm Lasers, Inc.*, 964 F.Supp. 90 (W.D.N.Y.1997) and *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340. Inasmuch as both of these cases address the elements of an unfair competition claim in the context of a motion to dismiss, both are readily distinguishable. Defendants' quotation of that portion of my decision in *Laser Diode* where I found that a counterclaim "adequately allege[d] the elements of a claim for unfair competition ..." does not assist them, because at this juncture in these proceedings they are required to do more than merely allege the elements of their claim; rather, in accordance with the strictures of Rule 56, they must demonstrate a genuine issue of material fact for trial. Defendants also allude to "related cases" apparently which they contend support their position, but they fail to identify them by name or citation. *See* Defendants Memorandum, p. 23, Dkt. # 59. That they have gratuitously concluded certain portions of their memorandum with the assertion that their claims raise genuine issues of fact does not alter the fact that they have not specifically identified what those issues are.

It was not until months later that defendants submitted the expert report of Dr. Eberhard Scheuing, a professor of marketing at St. John's University. Dr. Scheuing opines as to how Gleason's correspondence would tend to be construed by customers.

Expert Report of Dr. Eberhard Scheuing, dated October 30, 2000. He bases his opinion in large measure upon the particular language and structure of Gleason's June 23, 1998 letter. His theories about Gleason's motivation and reader responses, however, are grounded in speculation rather than admissible evidence.[4] In the form in which they have been presented to this Court, the exhibits to Dr. Scheuing's report are unauthenticated, inadmissible hearsay statements. Certain exhibits appear incomplete,[5] and the vast majority of the exhibits had not heretofore been submitted in response to the summary judgment motion.

■ With respect to any allegation contained within Dr. Scheuing's report or the exhibits attached to it that a Gleason subsidiary in Asia informed Japanese customers and potential customers that Gleason had already prevailed in this action, such claims are inadmissible hearsay which cannot be used to defeat a summary judgment motion. *See Scosche Industries, Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681–82 (Fed.Cir.1997) (refusing to consider hearsay testimony concerning alleged acts of unfair competition when ruling on summary judgment motion); *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir.1993) ("[i]nadmissible hearsay alone may not defeat a summary judgment motion"); *The Marley Company v. FE Petro, Inc.*, 38 F.Supp.2d 1070, 1080–1081 (S.D.Iowa 1998). Even assuming such hearsay could form an adequate evidentia-

---

4. For example, Dr. Scheuing cites Exhibit 371 in support of his opinion that there is "clear evidence of customer concern in response to Gleason's allegations...." Scheuing Report, p. 4. Exhibit 371 is a letter dated December 20, 1993. I fail to see how an exhibit which preceded Gleason's June 23, 1998 letter by nearly five years demonstrates any relevant customer concern about that which had not yet occurred.

5. *See* Exhibit 334, referencing an AAM purchase order for Oerlikon gear making machinery purportedly "attached hereto and expressly incorporated by reference herein," but which is not included in the exhibit. I further note that the existence of such a purchase order, apparently from October 1998, after AAM received Gleason's allegedly improper correspondence, would do little to support defendants' damages claim.

ry basis to overcome a motion for summary judgment, there is no indication of the specific content or context of the statements such that no genuine issue of material fact is generated that the statements were statements of fact in commercial advertising or promotion about defendants' goods or services. *Dethmers Mfg. Co. v. Automatic Equipment Mfg. Co.*, 70 F.Supp.2d 944, 982–982 (N.D.Iowa 1999); *see also Accent Designs, Inc. v. Jan Jewelry Designs, Inc.*, 827 F.Supp. 957, 964–65 (S.D.N.Y.1993) (granting summary judgment for defendant on plaintiff's unfair-competition claim based on allegation that defendant made false representations to plaintiff's customers that plaintiff was infringing defendant's patent).

■ Moreover, it is established that a party cannot defeat a well-founded motion for summary judgment simply by submitting an expert's "naked opinions." As the Seventh Circuit has noted:

> [A] party cannot assure himself of a trial merely by trotting out in response to a motion for summary judgment his expert's naked conclusion about the ultimate issue.... The fact that a party opposing summary judgment has some admissible evidence does not preclude summary judgment. We and other courts have so held with specific reference to an expert's conclusional statements.... An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process, and his "naked opinion" does not preclude summary judgment.... To put this differently, an expert's opinion based on "unsupported assumptions" and "theoretical speculations" is no bar to summary judgment.

*Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir.1997) (quoting *American Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1464 (7th Cir.1996) (Posner, C.J., dissenting)).

■ As the Federal Circuit held in *Zenith Elec. Corp. v. Exzec, Inc.*, 182 F.3d 1340, "before a patentee may be held liable under [the Lanham Act] for marketplace activity in support of its patent, the marketplace activity must have been undertaken in bad faith." *Id.* at 1353; *The Marley Co. v. FE Petro, Inc.*, 38 F.Supp.2d 1070, 1085–1087 (S.D.Iowa 1998) (granting summary judgment on Lanham Act claim and noting that "[complainant] may believe [respondent] acted in bad faith [but a] belief is insufficient, however, to survive a motion for summary judgment"). Because the "law recognizes a presumption that the assertion of a duly granted patent is made in good faith," *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1369 (Fed.Cir. 1998), *cert. denied*, 526 U.S. 1130, 119 S.Ct. 1804, 143 L.Ed.2d 1008 (1999), defendants are "charged with the task of coming forward with some affirmative evidence of bad faith in order to survive a motion for summary judgment." *System Management Arts, Inc. v. Avesta Technologies, Inc.*, 87 F.Supp.2d 258, 271, *reconsid. denied*, 106 F.Supp.2d 519 (S.D.N.Y. 2000); *cf. Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1476 n. 6 (Fed.Cir.1998) ("[w]e note that to survive a motion ... for summary judgment, more than a mere allegation of knowledge of the patent's unenforceability would be required"), *cert. denied*, 525 U.S. 1138, 119 S.Ct. 1026, 143 L.Ed.2d 37 (1999). Defendants have failed to do this.

Because defendants have therefore failed to carry their burden of setting forth admissible evidence capable of sustaining this aspect of their unfair competition counterclaims, Gleason's motion for summary judgment on this aspect of Counts IV and V of defendants' counterclaims is

granted.[6]

## III. The Interference with Business Relations Counterclaim

Count III of defendants' counterclaims is entitled "Interference With Business Relations." It includes the following allegations:

Gleason has publicized its claims of infringement of the '402 patent by Oerlikon [and Liebherr] to customers and potential customers of Oerlikon [and Liebherr]. By virtue of the claims of infringement publicized by Gleason to customers and potential customers of Oerlikon [and Liebherr], Gleason has intentionally and improperly interfered with present and future contractual relations between Oerlikon [and Liebherr] and its customers. As a result of Gleason's claims, Oerlikon [and Liebherr] has been damaged and will continue to be damaged and suffer injury and irreparable harm unless and until Gleason is enjoined.

Oerlikon's Answer and Counterclaims, ¶¶ 25–27, Dkt. # 33; see also Liebherr's Answer and Counterclaims, ¶¶ 26–28, Dkt. # 10. As stated in its notice of motion (Dkt.# 49), Gleason now moves for summary judgment on this counterclaim.

■ The elements of a claim for tortious interference with contractual relations are: (1) the existence of a valid contract; (2) defendants' intentional and unjustifiable interference with the performance thereof; and (3) damages suffered as a result of defendants' interference. Conmed Corp. v. ERBE Electromedizin GmbH, 129 F.Supp.2d 461 (N.D.N.Y.2001); see also WFB Telecommunications, Inc. v. NYNEX Corp., 188 A.D.2d 257, 590 N.Y.S.2d 460 (1st Dep't 1992) (to state a claim for tortious interference with contract, plaintiff must allege that defendant "intentionally and through improper means induced the breach of a contract between [plaintiff] and a third party") (citing Guard–Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 196, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980)), leave to appeal denied, 81 N.Y.2d 709 (1993); Kaminski v. United Parcel Service, 120 A.D.2d 409, 501 N.Y.S.2d 871 (1st Dep't 1986).

■ Liability attaches for tortious interference with prospective business relations when a plaintiff establishes: (1) business relations between the plaintiff and a third party; (2) the defendant's interference with those business relations; (3) the defendant acted with the sole purpose of harming the plaintiff, or used dishonest, unfair, or improper means; and (4) injury to the business relationship. Nadel v. Play–by–Play Toys & Novelties, Inc., 208 F.3d 368, 382 (2d Cir.2000); Goldhirsh Group, Inc. v. Alpert, 107 F.3d 105, 108–09 (2d Cir.1997). In essence, a claim for tortious interference with prospective business relations lies when "the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant." M.J. & K. Co., Inc. v. Matthew Bender and Co., Inc., 220 A.D.2d 488, 490, 631 N.Y.S.2d 938 (2d Dep't 1995) (citations omitted); See Haddle v. Garrison, 525 U.S. 121, 119 S.Ct. 489, 492, 142 L.Ed.2d 502 (1998).

■ Oerlikon and Liebherr have not established these necessary elements to overcome Gleason's summary judgment

---

**6.** Defendants' request for further discovery in response to this motion was limited to the allegation that this action was commenced without probable cause. See Defendants' Memorandum, pp. 2, 25, Dkt. # 59. No proper request pursuant to Fed.R.Civ.P. 56(f) was made regarding their allegations stemming from Gleason's marketplace activity.

motion. As previously stated, their counterclaim states only that "Gleason has publicized its claims of infringement ... to customers and potential customers" of Oerlikon and Liebherr, and that "Gleason has intentionally and improperly interfered with present and future contractual relations between Oerlikon [and Liebherr] and its customers," and that, as a result, Oerlikon and Liebherr have been damaged. Oerlikon's Answer and Counterclaims, ¶¶ 25–27, Dkt. # 33; Liebherr's Answer and Counterclaims, ¶¶ 26–28, Dkt. # 10.

Of course, since defendants are responding to a motion for summary judgment, they must do more than simply rely upon the allegations in their pleadings. However, defendants have largely ignored this aspect of Gleason's motion in their response. This fact is particularly surprising given that in their unsuccessful motion to amend their counterclaims defendants acknowledged "some deficiencies" with respect to even their allegations about Gleason's marketplace activities. Defendants' Notice of Motion to Amend, Dkt. # 58.[7]

While it is true that defendants cite the affidavit of Claus Singler, in arguing in their memorandum of law that their damages "can certainly be postulated by the fact that all the machine orders for the AAM Buffalo plant were awarded to Gleason" (Defendants' Mem., p. 21, Dkt. # 59), Mr. Singler never links any particular damages to Gleason. Instead, he merely states that AAM "indicated that numerous bevel and hypoid gear generating machines would be ordered at the conclusion of the face off competition" between Gleason's Phoenix machine and Oerlikon's C28 machine. Singler Aff. ¶ 4, Dkt. # 59. He makes no statement that AAM indicated in any way that it would purchase those machines from Oerlikon rather than Gleason;

indeed, it appears that AAM engaged in this "face off competition" to determine which machine better suited its needs. Further undermining defendants' unsupported assertion of damage is Singler's admission that AAM purchased "one Oerlikon machine for their plant in Detroit and several additional Oerlikon machines for their plant in Mexico," and exchanged four other Oerlikon machines for older machines in the Detroit plant at what appears to have been about the same time. *Id.* ¶ 5.

Notwithstanding defendants' speculation about the origin of their alleged damages and, leaving aside the fact that items contained within a memorandum of law do not constitute admissible evidence, Oerlikon and Liebherr have not demonstrated that any contract between Oerlikon or Liebherr and AAM or any other third party even existed for the purchase of Oerlikon's machines, much less that it was breached or that Gleason induced such a breach, or that Gleason's allegedly offending letter (Ex. 9, Dkt.# 59) injured defendants' relationship with AAM or any other entity. *See Nadel v. Play–by–Play Toys & Novelties, Inc.*, 208 F.3d at 382 (affirming decision granting summary judgment dismissing counterclaim for tortious interference with prospective business relations and holding that allegations based solely on suspicions "cannot suffice to support a claim for tortious interference"). In short, defendants have failed to put forth the requisite evidence in opposition to the pending summary judgment motion on their counterclaim for interference with business relations.

For these reasons, Gleason's motion for summary judgment with respect to Oerlikon and Liebherr's counterclaims for interference with business relations is grant-

---

7. To the extent defendants seek to rely on Dr. Scheuing's report with respect to Count III, many of my concerns articulated in section II–B, *supra,* apply here as well.

ed, and Count III of each defendant's counterclaims is dismissed.

## CONCLUSION

Gleason's motion for partial summary judgment (Dkt.# 49) with respect to Counts III, IV and V of defendants' counterclaims is granted in part and denied in part. The motion for summary judgment on Count III of defendants' counterclaims is granted. The motion for summary judgment is denied without prejudice with respect to that portion of Counts IV and V of defendants' counterclaims that pertain to the commencement of this action. The motion for summary judgment is granted with respect to that portion of Counts IV and V of defendants' counterclaims that pertain to Gleason's marketplace activity.

IT IS SO ORDERED.